UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

UNITED STATES OF AMERICA                    08-CR-6264CJS

        -vs-                           **GOVERNMENT'S**
                                       **RESPONSE IN OPPOSITION TO**
LAMAR RICHARDSON,                      **DEFENDANT'S OMNIBUS**
                                       **MOTION FOR RELIEF**
             Defendant.

―――――――――――――――――――――――――――

The United States of America, through its attorney, Kathleen M. Mehltretter, Assistant United States Attorney for the Western District of New York, Charles E. Moynihan, Assistant United States Attorney, of counsel, does hereby make and file its response to the defendant's notice of motion and affirmation all filed February 20, 2009.

## **FACTS**

On July 23, 2008, officer from the Rochester Police Department ("RPD") received information from a concerned citizen that two (2) males were selling drugs out of apartment # 1 of 1955 East Main Street, Rochester, New York.  The citizen stated that they had recently been inside the apartment and that a person known as "Luda" (later identified as JON LUCAS) was in possession of crack cocaine.  The citizen also stated that the males inside the apartment were barricading the door with a couch

and were selling drugs to people.  The concerned citizen further stated that there was a specific code-phrase a buyer had to say in order to make a purchase.  The code phrase was, in sum and substance, "You know me from down the street at Kelly's place." The concerned citizen also said that the apartment was rented in the name of another individual named "Ron".

The officers conducted surveillance on the apartment and, after observing some foot traffic to the building, went to speak with the occupants of 1955 East Main Street, Apartment A1.  The officers also observed multiple males standing in front of the building acting, according to their experience, in a manner consistent with being lookouts.  RPD Officer Matthew Klein knocked on the apartment door and a male voice inside inquired as to who was at the door.  Officer Klein said that they knew him from down the street at Kelly's place, the code-phrase identified by the concerned citizen.  The officer heard noise inside the apartment which he believed to be a couch being moved away from the door.  A male, later identified as LAMAR RICHARDSON, opened the apartment door and pointed a shotgun at Officer Klein.  When RICHARDSON saw the officer, he did not move the shotgun away from the officer's body.  Officer Klein moved away from the door and yelled to the other officers about the presence of a firearm. RICHARDSON slammed the apartment door shut.  The officers then

2

called any occupants out of the apartment.  RICHARDSON and a person later identified at Jon LUCAS exited the apartment and were taken into custody.  The officers performed a protective sweep of the apartment and observed a shotgun leaning against a wall in a bedroom.  Officer Klein recognized the firearm as the same one he saw RICHARDSON holding.  Another officer, Officer Kennedy, was able to see shotgun shells inside a cabinet through a partially open door.   The shotgun is a Winchester, model 1200, 12 gauge shotgun bearing serial number L745737.

The officers obtained a search warrant for the apartment from Monroe County Court Judge Richard Keenan immediately after this.[1]  During the search, the officers seized the shotgun described above and seized thirteen (13) live rounds of 12 gauge ammunition (six red and seven clear in color) in a bandolier. Officers found the bandolier inside a cabinet in the bedroom next to where they observed the shotgun.  They also located a spent shotgun shell (clear in color) outside of the apartment directly below one of the apartment windows.  The officers also located component parts to the shotgun in the livingroom.  They also located a plate with white powder residue found on a kitchen

---

[1]The incident which resulted in the current charges occurred on July 23, 2008 in the late evening hours.  The search warrant was obtained in the early morning hours of July 24, 2008 and is dated with this date.  The evidence in connection with this investigation was seized after this.

shelf.  They believed the powder residue to be cocaine.  RPD officers also noted a strong odor of marijuana was present inside the apartment.

A male, later identified as Ronnie Fladger was located near the apartment door and admitted renting the apartment. He denied any knowledge of drug dealing going on in his apartment but stated that the shotgun was not his and that the males brought the shotgun to his apartment.

An RPD officer saw a plastic bag protruding out of LUCAS' pants pocket.  When asked what was in the bag, LUCAS told the officer it was marijuana.  Officers searched LUCAS subsequent to his arrest and recovered a clear plastic sandwich bag from LUCAS' buttocks area.  The sandwich bag contained five (5) clear zip lock bags.  Each of the five (5) bags contained a substance suspected to be cocaine base.   The Monroe County Public Safety Laboratory tested the substance and confirmed that it was cocaine base with an aggregate weight of 4.6 grams.  LUCAS also had $432.00 of US currency in one of his pockets.

RPD officers removed RICHARDSON and LUCAS from the location and transported them to the Public Safety Building to be interviewed.  RICHARDSON and LUCAS received <u>Miranda</u> warnings and

4

both acknowledged that they understood the warnings and agreed to speak with law enforcement.  During the interview of RICHARDSON, he initially denied ever possessing the shotgun.  When RICHARDSON was told that RPD swabs firearms for DNA samples, he admitted to handling the shotgun in the past and placing it behind the door. LUCAS explained during the interview that he was in the kitchen and did not see anyone with a shotgun.

On December 17, 2008, a United States grand jury returned a five-count indictment charging RICHARDSON and his co-defendant, LUCAS, with violating Title 21, United States Code, Section 846 (conspiracy to possess cocaine base with the intent to distribute), Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(c) and Title 18, United States Code, Section 2 (possession of cocaine base with intent to distribute), Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2 (maintaining a premises for the purposes of manufacturing, distributing and using cocaine base and marijuana), Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2 (possession and brandishing a firearm during and in relation to a drug trafficking offense), as well as a forfeiture provision.

## SEVERANCE

Federal Rule of Criminal Procedure 14(a) permits the district court to sever defendants' trials if it appears that a defendant is prejudiced by the joinder of defendants.  One basis for severance is prejudicial "spill over."  Spill over occurs when evidence that is admissible as against one defendant is prejudicial against all defendants and that individual trials should have been held to avoid that prejudice.  United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992).  In order to gain severance, a defendant must show that the prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."  United States v. Walker, 142 F3d 103, 110 (2d Cir. 1998).  Here, the Court should deny the defendant's request for severance.  He fails to show, other than by conclusory allegations, that prejudice from a joint trial is sufficiently severe enough to outweigh the judicial economy that would be realized by avoiding multiple trial.

## DISCOVERY CONCERNING GRAND JURY PROCEEDINGS

Defendant moves for disclosure of various aspects of the grand jury proceedings in this case, including statements about

the manner in which the grand jury was presented the indictment, information regarding witnesses who may have testified before the grand jury, as well as information concerning grand jury voting records and juror attendance.  The government opposes this request.

"It is axiomatic that an indictment returned by a legally constituted and unbiased grand jury is valid on its face, and is enough to call for a trial of the charge on the merits." United States v. Elliott, 363 F. Supp.2d 439, 451 (S.D.N.Y. 2005) (citing United States v. Williams, 504 U.S. 36, 54 (1992); Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988); Costello v. United States, 350 U.S. 359 (1956); and United States v. Torres, 901 F.2d 205, 232 (2d Cir. 1990)).  As a general rule, there is a presumption that grand jury proceedings are lawful and regular.  See Hamling v. United States, 418 U.S. 87, 139 n.23 (1974); United States v. Salameh, 152 F.3d 88, 109-10 (2d Cir. 1998); Torres, 901 F.2d at 232.

Disclosure of grand jury proceedings to a defendant is available only by court order.  Fed. R. Crim. P. 6(e).  The Second Circuit has stated that Rule 6(e)

> was not designed as an authorization for pretrial discovery.  Its purpose, on the contrary, is to protect the secrecy of the Grand Jury proceedings by

restricting disclosure to the exceptional case where a
particularized need is shown.

United States v. Weinstein, 511 F.2d 622, 627 (2d Cir. 1975)

(footnote omitted).


A defendant seeking disclosure of grand jury proceedings

bears the burden of establishing a "particularized need" or

"compelling necessity" for such disclosure that outweighs the

general policy of grand jury secrecy. See Douglas Oil Co. V.

Petrol Stops Northwest, 441 U.S. 211, 222 (1979); Pittsburgh

Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959).  Non-

specific allegations of impropriety or mere speculation are

insufficient to satisfy this heavy burden. See United States v.

Calandra, 414 U.S. 338, 345 (1974); United States v. Wilson, 565

F. Supp. 1416, 1436-37 (S.D.N.Y. 1983).  As a result, a

defendant's request for "review of grand jury minutes is rarely

permitted without specific allegations of governmental

misconduct." Torres, 901 F.2d at 233.


In this case, defendants do not offer specific allegations

of governmental misconduct before the grand jury.  Rather, the

assert that they are entitled to disclosure of the grand jury

proceedings on that theory that, if any improper conduct occurred

before the grand jury, it could form the basis for a motion to

8

dismiss the indictment.  Defendants offer only speculative, unsubstantiated allegations of impropriety, which are patently insufficient to warrant disclosure of the grand jury proceedings. See United States v. Nunez, 2001 WL 91708, at *11 (S.D.N.Y. Feb. 1, 2001) (holding defendant not entitled to disclosure of grand jury proceedings on ground that grand jury was improperly instructed on the law); United v. Henry, 861 F. Supp. 1190, 1193 (S.D.N.Y. 1994) (stating "defendant's mere speculation as to what occurred in front of the Grand Jury does not warrant inspection of the minutes by defense counsel"); United States v. Morgan, 845 F. Supp. 934, 941 (D.Conn. 1994) (holding no disclosure of grand jury proceedings where defendant claimed government improperly instructed grand jury on the law); United States v. Burford, 755 F. Supp. 607, 614 (S.D.N.Y. 1991) (stating "[b]efore a court will disrupt the traditional secrecy surrounding grand jury proceeding[s], a defendant must show evidence of an irregularity and not merely make a statement on information and belief"); Wilson, 565 F. Supp. 1436 (stating "[s]peculation and surmise as to what occurred before the grand jury is not a substitute for fact").

Because the defendants have failed to establish a particularized need for disclosure of the grand jury proceedings, this Court should deny their request in its entirety.

## REVIEW OF THE GRAND JURY PROCEEDINGS AND DISMISSAL OF INDICTMENT

The government opposes the defendant's request for review of the grand jury proceedings and dismissal of the indictment based up on lack of proper instructions and voting irregularities. Dismissal motions may be based up on a series of factors including, but not limited to, defects contained within the indictment, United States v. Perez, 330 F.3d 97, 104 (2d Cir. 2003), as well as defects in the manner in which a prosecution was initiated.  Fed. R. Crim. P. 12(b).  Further, grand jury proceedings carry a "'presumption of regularity.'"  Hamling v. United States, 418 U.S. 87, 139 n. 23, (1974); see also United States v. Calandra, 414 U.S. 338, 345 (1974); Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979).  A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct. See United States v. Wilson, 565 F. Supp. 1416, 1436-37 (S.D.N.Y.1983).   Furthermore, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Bank of Nova Scotia v. United States, 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988).  The Court should deny this request to review the grand jury minutes and

10

dismiss the indictment as the moving papers do not state sufficient grounds upon which to grant the requested relief.

## MOTION TO SUPPRESS EVIDENCE

The Government opposes the request of the defendant to suppress evidence seized by law enforcement authorities in connection with this investigation.  Specifically, the defendant asks the Court to suppress evidence, including cocaine base, drug paraphernalia, a shotgun and ammunition, marijuana, a sum of United States currency and other items seized in connection with this investigation on or about July 23 and 24, 2008.  The government opposes the suppression of the evidence obtained from this investigation.

## Exigent Circumstances Permitted the
## Officers to Enter the Residence

The government opposes the suppression of the shotgun obtained from the search of 1955 East Main Street because exigent circumstances existed to allow police officers to enter the residence.  Officers responded to investigate a report of drug trafficking and observed a person they later identified as the defendant point a shotgun at an officer through an open door.

11

The officers asked the defendant and co-defendant to exit the residence and then entered the residence and observed the shotgun and ammunition in one of the rooms.

They entered the residence to conduct a search for further suspects who could have easy access to the firearm once the defendant and his co-defendant exited the premises, as well as locate the firearm and secure it so it could not be utilized to harm the officers or others during the investigation.  Further, the firearm, as it was possessed by the defendant did not contain a trigger lock, which is a per se violation of the Code of the City of Rochester and provided probable cause to arrest the defendant.  § 47-5 C (4) of the Charter and Code of the City of Rochester; United States v. Forte, 412 F. Supp.2d 258, 266 (W.D.N.Y. 2006).

A warrantless search of a premises based on probable cause is reasonable if exigent circumstances exist creating urgent need for police action.  United States v. Fields, 113 F.3d 313, 323 (2d Cir. 1997).  Several factors affect whether or not exigent circumstances exist.  These include (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause ... to believe that the

suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.  United States v. MacDonald, 916 F.2d 766, 769, 70 (2d Cir. 1990).  Courts must look at the totality of the circumstances in determining whether exigent circumstances exist.  Id. at 769.  The officers entered the residence in order to ascertain whether or not others were inside.  They observed the shotgun which had been pointed at the police officers.  The shotgun and ammunition observed during this security sweep could have been seized as a result of being plain view.  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

The Court should deny requested suppression of this evidence in all respects on this basis.  In the alternative, the government does not oppose a hearing with respect to this issue.

**Subsequent Search of the Location Permitted by Search Warrant**

After the officers conducted the security sweep of the residence and obtained a search a warrant from Monroe Count Court Judge Richard Keenan.  They seized the shotgun and ammunition described above.  They located drug paraphernalia and a bandolier and component parts to the shotgun and a spent shell casing.

The government opposes the suppression of the evidence obtained from the search of the residence because the search was the product of a search warrant based upon probable cause.  The United States Constitution provides, "[N]o warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The warrant must be based upon a judicial determination of probable cause based upon a sworn affidavit which particularizing the place to searched and the particularizing the persons and things to be seized.  Groh v. Ramirez, 540 U.S. 551, 554 (2004).  The neutral and detached magistrate must find that probable cause exists to believe that a crime has been committed and that evidence of that crime will be found in the place to be searched.  United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983).  The test for whether or not probable cause exists should be based on the "totality of the circumstances."  Illinois v. Gates, 462 U.S. 213, 230-31 (1983).  Great deference is accorded to a probable cause determination made by a judicial officer issuing a warrant.  United States v. Nichols, 912 F.2d 598, 602 (2d Cir. 1990).  Here, the search warrant was, based upon the totality of the circumstances, based upon probable cause.  Any evidence seized was the product of a searched based upon this search warrant.

The Court should deny requested suppression of this evidence in all respects on this basis.  In the alternative, the government does not oppose a hearing with respect to this issue.

### Good Faith Reliance on the Search Warrant

Even if the search warrant was not supported by probable cause, law enforcement officers acted in good faith by executing the search warrant at 1955 East Main Street, Apartment 1 on July 23, 2009.  The application was made in good faith.  The terms of the search warrant permitted the search of the target address, which was done.  The search warrant was also executed the night it was obtained from Monroe County Court Judge Richard Keenan. As such, the fruits of the search warrant should not be suppressed.  United States v. Leon, 468 U.S. 897 (1984). Additionally, it is worth noting that the officers executing the search warrant had no basis to believe that the search warrant was invalid.  Thus, invoking the exclusionary rule would be improper.  See Illinois v. Krull, 480 U.S. 340, 348 (1987), citing United States v. Leon, 468 U.S. 897.

## <u>Spent Shotgun Shell Properly Seized as Abandoned Property</u>

As stated above, the officers located a spent shotgun shell on the ground outside of a window to the residence. The officers seized this spent shotgun shell after they obtained a search warrant. However, if this Court were to determine the search warrant obtained in connection with this case was invalid, the officers were still able to seize the shell as abandoned property. It was located on the ground outside of a window to the apartment in plain view. As such, the officers would have been proper in seizing the shotgun shell as abandoned property.

A warrantless seizure of abandoned property does not offend the Fourth Amendment. <u>United States v. Welbeck</u>, 145 F.3d 493, 498 (2d Cir. 1998); <u>See also</u> <u>Abel v. United States</u>, 362 U.S. 217, 241 (1960). The abandonment of property is tantamount to the forfeiture of any reasonable expectation of privacy in that property. <u>See</u> <u>United States v. Lee</u>, 916 F.2d 814, 818 (2d Cir. 1990). Abandonment is successfully affected by throwing property away. <u>See</u> <u>Hester v. United States</u>, 265 U.S. 57, 58 (1924). In order to determine whether or not property has been abandoned, a court must look at the intent of the person allegedly abandoning the property. <u>United States v. Moskowitz</u>, 883 F.2d 1142, 1147 (2d Cir. 1989). Intent is determined from the defendant's words,

16

acts, and other relevant circumstances.  United States v.
Anderson, 754 F. Supp. 442, 444 (E. D. Pa 1990); see also, United
States v. Anderson, 663 F.2d 934, 938 (9th Cir. 1981).


The Court should deny requested suppression of this evidence
in all respects on this basis.  In the alternative, the
government does not oppose a hearing with respect to this issue.


### Evidence seized from the Defendant was the Product of a Search Incident to Lawful Arrest


Any evidence seized from the defendant was the product of
the search of the defendant at the time of his arrest.  Officers
may conduct a search incident to a lawful arrest of a suspect
without a search warrant.  Preston v. United States, 376 U.S.
364, 367 (1964); United States v. Sorenson, 330 F.2d 1018, 1020
(2d Cir. 1964).  Officers may search the suspect for weapons or
for the fruits of or implements used to commit crimes.  Preston,
376 U.S. at 367.


Here, Richardson was subjected to arrest based upon probable
cause that he had violated multiple criminal statutes.  Officers
observed him point a shotgun at a police officer and found this
shotgun inside an apartment in which officers could detect an
odor of marijuana.  They also found drug paraphernalia in the

17

apartment.  Further, the search and subsequent recovery of
cocaine base, marijuana and US currency from the co-defendant
was, likewise, incident to lawful arrest.

Accordingly, the United States requests that the Court deny
defendant's motion to suppress the physical evidence seized by
police.  In the alternative, the United States does not oppose a
hearing on this issue to resolve any disputed issues of fact.

## MOTION TO SUPPRESS STATEMENTS

The United States opposes defendant's motion to suppress the
statements he made to law enforcement at the time of his arrest.
The Court should deny suppression of the statements made by the
defendant at 1955 East Main Street prior to his arrest.  The
defendant made several statements that were not the product of
in-custody questioning by police officers.  Statements made by
the defendant at the scene were spontaneously made, and not the
product of any custodial interrogation, or its "functional
equivalent." Rhode Island v. Innis, 446 U.S. 291, 301 (1980);
see also, Miranda v. Arizona, 384 U.S. 436, 478
(1964)("[V]olunteered statements of any kind are not barred by
the Fifth Amendment and their admissibility is not affected by
our holding today").  In this case, the defendant asked Officer

Klein, one of the police officers on scene, "Klein, Klein, what you doin' at my door." This statement was not the result of any questioning and spontaneously uttered by the defendant.

Further, this Court should deny the defendant's request for suppression of statements made at 1955 East Main Street because they were the product of police questioning during an investigatory stop. The Fourth Amendment is not violated when a police officer with reasonable suspicion that criminal activity is afoot briefly detains (seizes) a suspect while making a reasonable investigation to confirm or dispel the officer's suspicion. The investigation normally includes brief questioning "reasonably related in scope to the justification" for the stop. United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975). The Supreme Court has declined to require the administration of Miranda warnings during an investigative stop. Berkemer v. McCarty, 468 U.S. 420, 441 (1984).

Further, the oral statements made by the defendant at the Rochester Police Department were subsequent to his knowing, intelligent, and voluntary waiver of his Miranda rights. The defendant made these statements after having been arrested based upon probable cause. There was no violation of defendant's constitutional rights, nor any conduct of law enforcement which

rendered defendant's statements involuntary.  At no time did any officer make any threats or promises to the defendant in order to elicit the statements.

Accordingly, the United States requests that the Court deny defendant's motion to suppress the statements he made to police. In the alternative, the United States does not oppose a hearing on this issue to resolve any disputed issues of fact.

### DISCLOSURE OF INFORMANT IDENTITY

No confidential informant was utilized in this case.

### JENCKS ACT

The Government agrees to provide material pursuant to Title 18, United States Code, Section 3500 two weeks before the commencement of trial in this case or pursuant to the Court's pretrial order, which ever date is first.  United States v. Feola, 651 F. Supp 1068, 1141 (S.D.N.Y 1987).

## RULES 404, 608 AND 609

Defendant has been provided with a copy of his criminal record.  It would be the government's intention to use any convictions which are listed or referred to in the record and reports as felonies, or which bear on defendant's character for truthfulness or untruthfulness, for the purpose of impeaching the defendant's credibility.  It is the government's position that the probative value of admitting any such past acts into evidence outweighs any prejudicial affect they may have.  As required by Rule 404(b), the government will "provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial."

## BRADY

The Government acknowledges its obligation pursuant to In re, United States v. Coppa, 267 F.3d 132 (2d Cir. 2001).  See also, Brady v. Maryland, 373 U.S. 83 (1963).  To the extent that the Government is aware that any such information is known to exist, the defendant has been advised, with the exception of impeachment material (Giglio[2] material).  Giglio material will be disclosed two weeks before trial or at the pretrial conference,

---

[2] Giglio v. United States, 405 U.S. 150 (1972).

whichever occurs first.  The Government also acknowledges its continuing obligation with respect to all material exculpatory information.

## DISCOVERY AND INSPECTION

Defendant has been provided with discovery under cover letter dated January 7, 2009 and on January 9, 2009 indicating that the United States intends to use the items contained therein.  If further information becomes available, it will be forwarded promptly to the defendant.  As for the defendant's instant requests, to the extent that it calls for items not contemplated by Rule 16 of the Federal Rules of Criminal Procedure, it is opposed.  The United States will provide the requested Rule 16(a)(1)(E) in compliance with the revised order of the Court.

Defense counsel is encouraged to meet with me in order to review my file.

## RECIPROCAL DISCOVERY DEMAND

The defendant having made a demand for discovery and inspection pursuant to Rule 16(a)(1)(A), (B), (C), (D) and/or (E)

of the Federal Rules of Criminal Procedure, and counsel for the United States having complied with said demand, the United States now, pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, hereby demands to inspect and copy or photograph the following:

1.   All books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody, or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial;

2.   Any and all results or reports of physical or mental examinations and of scientific tests of experiments made in connection with the instant case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to his testimony;

3.   Disclosure, pursuant to Rule 16(b)(1)(c) of the Federal Rules of Criminal Procedure, of a written summary of testimony the defendant intends to use under Rules 702, 703 and 705 of the Federal Rules of Evidence, including the opinions of witnesses, the cases and reasons therefor and the witness' qualifications. With regard to the underlying bases for an expert's testimony, that should cover not only written and oral reports, tests, reports and investigations, but any information that might be

recognized as a legitimate basis for an opinion under Federal Rules of Evidence 703, including opinions of other experts (see Conference Committee Notes, 1993 Amendment, Rule 16, Federal Rules of Criminal Procedure, p. 84);

4.   Pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, counsel for the United States requests that, prior to the trial of the above-captioned case, the defendant disclose all prior statements, as defined in F.R.Cr.P. 26.2(f), of any witness to be called by the defendant in the trial of this case, as such statements relate to the subject matter of the witness' direct testimony.  Further, counsel for the United States requests that such material be provided on the same basis that we are to supply materials pursuant to 18 U.S.C. § 3500, that is, no later than two weeks prior to the start of trial[3]; and

5.   If, prior to or during trial, the defendant discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this Rule, the defendant shall promptly notify the attorney for the United States of the existence of the additional evidence or material as required by Rule 16(c) of the Federal Rules of Criminal Procedure.

---

[3] Pursuant to the Local Rules, we request a meeting with defendant's counsel as soon as possible to discuss the resolution of any problems with this reciprocal discovery request.

## BILL OF PARTICULARS

Defendant moves for a bill of particulars under Fed. R. Crim. P. 7, requesting specific information to assist him to prepare a defense.

Rule 7(f) of the Federal Rules of Criminal Procedure empowers the Court to direct the filing of a bill of particulars in certain limited circumstances.  The purpose of a bill of particulars is to enable a defendant to "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  A bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990).

It is well-settled that a bill of particulars may not be used to compel the government to provide the defendant with "evidentiary detail" about the its case. Torres, 901 F.2d at 234; see also United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991) (holding that bill of particulars not required to identify the specific activities by which defendant furthered conspiracy).

Similarly, a bill of particulars may not be used to compel the government to disclose the manner in which it will prove the charges or preview the evidence or theory of its case. See United States v. Perez, 940 F. Supp. 540, 550 (S.D.N.Y. 1996); United States v. Facciola, 753 F. Supp. 449, 451 (S.D.N.Y. 1990), aff'd sub nom., United States v. Skowronski, 968 F.2d 242 (2d Cir. 1992); United States v. Taylor, 707 F. Supp. 696, 699 (S.D.N.Y. 1989); United States v. Biaggi, 675 F. Supp. 790, 809 (S.D.N.Y. 1987).  The standard to be applied to the information sought is not whether it is helpful to the defense, but whether it is necessary. See United States v. Love, 859 F. Supp. 725, 738 (S.D.N.Y. 1994), aff'd sub nom., United States v. Roberts, 41 F.3d 1501 (1994).

Whether to order the filing of a bill of particulars rests with the sound discretion of the court. See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  "In exercising that discretion, the court must examine the totality of the information available to the defendants – through the indictment, affirmations, and general pre-trial discovery – and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." United States v. Bin Laden, 92 F. Supp.2d 225, 233 (S.D.N.Y. 2000).  With these principles in mind, courts have generally

denied a bill of particulars when the information sought by the
defendant is contained in the indictment or "some acceptable
alternative form," such as discovery materials previously
provided by the government. United States v. Desantis, 802 F.
Supp. 794, 797-798 (E.D.N.Y. 1992); see also Walsh, 194 F.3d at
47 (stating "a bill of particulars is not necessary where the
government has made sufficient disclosures concerning its
evidence and witnesses by other means"); Torres, 901 F.2d at 234.

It is important to note that "[a] bill of particulars
confines the government's evidence at trial to the particulars
furnished." United States v. Payden, 613 F. Supp. 800, 816
(S.D.N.Y. 1985).  The Court, therefore, must "balance restricting
the Government's proof against protecting the defendant from
surprise." Id.; see also United States v. Mahaffy, 446 F. Supp.2d
115, 120 (E.D.N.Y. 2006) (stating bill of particulars would
"'confine[] the Government's proof to particulars furnished' and
'restrict unduly the Government's ability to present its case'")
(quoting Feola, 651 F. Supp. at 1132).

The allegations in the Indictment, taken together with the
extensive voluntary discovery materials provided to the defense,
and the government's court filings render a bill of particulars
wholly unnecessary in this case.  The Indictment alleges several

criminal acts and sets forth the date on which the crimes occurred. As detailed in the section entitled "Discovery and Inspection" contained above, the government, in an effort to amplify the allegations contained in the Indictment, has provided defense counsel with thorough and well-organized voluntary discovery materials since the inception of this case. Such discovery materials included, <u>inter alia</u>, a copy of the search warrant and affidavit, a copy of police reports generated from arrest of the defendant and the co-defendant and from the execution of the search warrant at 1955 East Main Street, Apartment 1, Rochester, New York, and other documentary and tangible evidence.

The government submits that the information already disclosed in the Indictment, the voluntary discovery materials, and the government's filings in court, more than adequately informs the defendants of the crime charges and essentially provides the defendants with a detailed outline of the government's case against him. The detailed information contained in these disclosures enables the defendant to adequately prepare a defense and avoid prejudicial surprise at trial.

28

## RESERVATION OF MOTIONS

The government has no objection to the defendant bringing further motions in this case, provided that such motions could not have been previously made and decided by the Court.

Dated: Rochester, New York, March 6, 2009.

                              KATHLEEN M. MEHLTRETTER
                              Acting United States Attorney


                    BY:   S/CHARLES E. MOYNIHAN
                          CHARLES E. MOYNIHAN
                          Assistant United States Attorney
                          United States Attorney's Office
                          Western District of New York
                          620 Federal Building
                          100 State Street
                          Rochester, New York 14614
                          (585) 263-6760 ext. 2271
                          Charles.moynihan@usdoj.gov

TO: Maurice Verrillo, Esq.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────────

UNITED STATES OF AMERICA                    08-CR-6264CJS

            -vs-

LAMAR RICHARDSON,

                  Defendant.
─────────────────────────────────────────

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on March 6, 2009, I electronically
filed the foregoing with the Clerk of the District Court using
its CM/ECF system, which would then electronically notify the
following CM/ECF participants on this case:


     1.   Maurice Verrillo, Esq.



                         <u>S/ANNA M. SEDOR</u>
                         ANNA M. SEDOR